Pages 1 - 28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

UNITED STATES OF AMERICA,      )
                               )
        Plaintiff,             )
                               )
        vs.                    )     **CASE NO. 22-MJ-70781-MAG**
                               )
ALEX KAI TICK CHIN,            )
                               )
        Defendant.             )
_____)

San Francisco, California
Friday, June 17, 2022

**<u>TRANSCRIPT OF REMOTE ZOOM VIDEOCONFERENCE PROCEEDINGS</u>**

**APPEARANCES VIA ZOOM:**

For the Government:

                          UNITED STATES ATTORNEY'S OFFICE
                          450 Golden Gate Avenue
                          Floor 11
                          San Francisco, California 94102
                          **BY: CHRISTA HALL, ATTORNEY AT LAW**

For the Defendant:

                          FEDERAL PUBLIC DEFENDER
                          NORTHERN DISTRICT OF CALIFORNIA
                          450 Golden Gate Avenue
                          RM 19-6884
                          San Francisco, California 94102
                          **BY: DAVID R. RIZK, ATTORNEY AT LAW**

TRANSCRIPTION SERVICE BY:

                          Dipti Patel, CET-997
                          Liberty Transcripts
                          7306 Danwood Drive
                          Austin, Texas 78759
                          (847) 848-4907

2

1    **Friday - June 17, 2022**                        **11:33 A.M.**

2                        **P R O C E E D I N G S**

3                            ---O0O---

4        **THE CLERK:**  Calling Criminal Action 22-70781, USA vs. Alex

5    Kai Chin.  Counsel, if you could please state your appearances

6    for the record.

7        **MS. HALL:**  Good morning, Your Honor, Christa Hall on behalf

8    of the United States.

9        **MR. RIZK:**  Good morning, Your Honor.  David Rizk for Mr.

10   Chin.  He's present.  He's in custody.

11       **THE COURT:**  All right.  Good morning again to you both.

12       So Mr. Rizk, how do you want to proceed today in light of

13   the --

14       (Discussion with courtroom staff)

15           THE COURT:  All right, Mr. Rizk, how do you want to

16   proceed today?

17       **MR. RIZK:**  My client wants to proceed with detention.

18       **THE COURT:**  Okay.  So I think what the best thing, Ms. Hall,

19   is under the circumstances to let Mr. Rizk start first.  And then

20   if there's -- since I have a pretty good record of the

21   Government's position and then afterwards you can comment if

22   that's all right, Mr. Rizk.

23       **MR. RIZK:**  Yeah.

24       So my pitch to Your Honor is that Mr. Chin is somebody who

25   would ordinarily be released in a district like this given his

3

1   bail resources.  His parents are both here.  They're strong

2   sureties.  And he is amenable to the strict as possible

3   conditions.

4         You know, he's spent his entire life in the Bay area.  He is

5   fairly young.  He has a record of employment.  His parents are

6   very concerned about the case.  Obviously, he's very concerned

7   about the case.  And I don't think -- I actually think that he

8   is reliable and going to prove to be a good bet on bail.

9         Mr. Chin reached out to me, believe it or not, probably

10  about a month ago, before this case was filed.  He called me and

11  raised concerns that he was under investigation because he had

12  learned that law enforcement had contacted his parents and his

13  brother and had asked about his whereabouts.

14        And he didn't run. He didn't go anywhere.  He continued -- I

15  advised him and he followed my advice and he continued to just

16  live his life, go to work, remain in the Bay area.  So -- and

17  here he is.  And he had actually previously hired -- retained a

18  lawyer for a little bit to receive advice about the situation.

19  And obviously, he contacted my office.

20        So I think that despite the seriousness of the allegations,

21  he's here to stay.  He's never missed a court date, I don't

22  believe.  And as for the allegations -- let me just say he

23  doesn't have any significant history of drugs.  You know, he

24  definitely is somewhat depressed, but that can be addressed with

25  medication.

1    He is happy to go to the halfway house.  He could live with

2  his parents on electronic monitoring.  He would basically

3  stipulate to any conditions the Court would place on him.

4    **THE COURT:**  The parents said they were not willing to have

5  him live with them.

6    **MR. RIZK:**  Well, we can find him another address if that's

7  required.

8    **THE COURT:**  I had a question just to be (indiscernible).

9  Pretrial Services in your recommendation, it's a little different

10  from our standard child pornography offense, because it's

11  production as opposed to just you know, possessing it, which is a

12  typical offense.

13    It's a little bit different.  There's also the Defendant as

14  to the allegation that he made contact with the victim.  So two

15  things I wanted to ask Pretrial just to clarify.

16    He said that his (indiscernible).

17    **MR. RIZK:**  I think they'll pay for it once, but he's

18  prepared to pay for it himself.

19    **THE COURT:**  They're going to pay for it once.

20    **MR. RIZK:**  Support from his parents.  I mean he has some

21  assets, not a ton, but he has some savings.  He can sell his car.

22  It's not -- and I don't know  how many in-person appearances he

23  would actually need to make ultimately in West Virginia.

24    I don't think -- that shouldn't be --

25    **THE COURT:**  (Indiscernible).

5

1     **MR. RIZK:**  -- the stumbling block.

2          You know, as for the allegations, obviously, Government

3     counsel produced three reports, three DHS reports, to me into

4     Pretrial.  And beyond that, like I don't know how I can -- again,

5     this is kind of discovery issue.  But I think it would be

6     irresponsible for me to proffer a bunch about rebutting the

7     allegations about what happened.

8          I don't have full discovery.  This is a very serious case.

9     I think his counsel -- I mean I could request full discovery, but

10    I really think it belongs with his counsel in West Virginia

11    ultimately because I just can't proffer a bunch in a case of this

12    seriousness about what happened supposedly in March of 2022.

13    **THE COURT:**  One more question and then we'll (indiscernible)

14    -- and I'll tell you another thing for you to think about because

15    the whole expired passport when he had traveled from Mexico and

16    an expired passport and dismissing, that struck me as odd.  So --

17    **MR. RIZK:**  Okay.

18    **THE COURT:**  -- that was the issue that struck me about the

19    risk of flight.  (Indiscernible).

20    **MS. HALL:**  I can't elaborate since I did not see the report.

21    I would just note he would be third on the wait list

22    (indiscernible).

23    **THE COURT:**  All right.  So I am concerned about the

24    passport.  A trip to Mexico, you can't go to Mexico without a

25    passport.

6

1      **MR. RIZK:**  That's not true.  That's not true.  You can I

2  think --

3      **THE COURT:**  You can cross it at Tijuana?

4      **MR. RIZK:**  I think so.  I mean the Government could look

5  into whether he presented a passport.  We're happy to look into

6  that.  But I don't think you have to have a passport to walk into

7  Mexico.  I could be wrong.

8      **MS. HALL:**  I walked in, in February 2020, to go to Valle de

9  Guadalupe.  And I had to show my passport to get in.  I did not

10  have to show my passport to get out.

11      **MR. RIZK:**  I haven't (indiscernible).

12      (Pause)

13      **THE COURT:**  Maybe they took it.

14      **MR. RIZK:**  It says -- the report says he presented a duly-

15  issued California driver's license with a driver's license number

16  on it.

17      **MS. HALL:**  I believe he also --

18      **THE COURT:**  And an expired passport might work, too, you

19  know, at the border for Mexico.  But it's fine.  I thought that

20  was just a little weird like missing passport, went to Mexico and

21  wanted verification.

22      All right.  So Ms. Hall, what do you want to -- I mean I was

23  aware of the general nature of the offense and I had some

24  concerns from the bail setting all by myself.  But why don't you

25  -- do you just want to proffer something additional?

1     I think, you know, when Pretrial Services does its bail

2  assessment, just so you know -- I mean I'm sure you know this,

3  but they do a pretty robust assessment on dangerousness, et

4  cetera, validated (indiscernible).

5     And when they say danger can be addressed by conditions, I'm

6  usually -- I mean I'm concerned about the contact with the

7  victim, but I trust Pretrial Services' pool that they use to

8  assess dangerousness, at least in a situation like this, because

9  -- but, you know, my larger concern was some of the issues that

10  attach to transientness and the fact that the parents weren't

11  willing to have him live with them.

12     I mean I can understand that --

13     **MR. RIZK:**  I mean I can address that.  I think it's --

14     **THE COURT:**  I mean it's tough.  I mean these sorts of things

15  are tough, right.  So I'm not trying to criticism -- I mean it

16  happens a lot, particularly with people with substance abuse

17  issues.

18     **MR. RIZK:**  Sure.

19     **THE COURT:**  Or there can be a ton of things that attend the

20  difficulty that attaches to your child who has problems.

21     So it's not -- but it does tend to create an atmosphere of

22  volatility that shows problematic, especially concerned with the

23  -- you know, I think the dangerousness issue kind of bleed into

24  seriousness of flight.  And then I was concerned about the

25  passport issue missing.  But I understand it was in the car.

1    So those are the things that I thought about when I read the

2    bail study.  So tell me what else you'd like to tell me, Ms.

3    Hall.

4        **MS. HALL:**  And I can keep it brief, Your Honor, because I

5    know you probably saw that we filed a memorandum.

6        **THE COURT:**  Yes, yes, yes, of course.  Yes, that's why I --

7        **MS. HALL:**  And I do respect the process.  And although I

8    don't have as much experience in the (indiscernible) risk, I

9    would disagree that this is the type of case that would allow for

10   release.

11       I want to emphasize that this -- as Your Honor already

12   mentioned, this is not a simple possession case.  We're dealing

13   with children.  We're dealing with sexual exploitation which is

14   obviously --

15       **THE COURT:**  How old is the minor victim in this case?

16       **MS. HALL:**  Fifteen to -- one of them was 15 to 16.  He

17   believed he was 13.  I believe that minor victim actually has

18   some mental disabilities.  And then there was another minor

19   victim.  And this isn't something where he was just -- not only

20   just possessing child pornography but, obviously, going further

21   to SnapChat and took it upon himself to drive the expense and the

22   distance all the way to West Virginia to meet and -- meet these

23   children in the store.

24       You know, and they blocked him and --

25       **THE COURT:**  I hear you. But I do think those sorts of things

1  if you put someone in a halfway house, for example, that's -- you

2  know, that can address the dangerousness issue.  They're

3  essentially (indiscernible).  That's why Pretrial Services says

4  conditions can be factored to address that. You can make sure

5  that -- we can make sure we know where someone is 24-7 and

6  actually I think going to a halfway house and see if home

7  detention with electronic monitoring.

8       Although I think the nature of the crime is serious, the

9  issue really is danger to the community.  And I think that

10  halfway house, they lock you down for the first 30 days, you see

11  how things go, I think that that can address that issue.

12       But I am concerned with the seriousness of flight.  And I

13  wonder what you might say about that.

14       **MS. HALL:**  He has zero ties, to my knowledge.  The

15  Government has no information as to ties to West Virginia.  And

16  my -- and so my then my follow-up issue would be how would the

17  halfway house, how would he get to court appearances in West

18  Virginia and then --

19       **THE COURT:**  We just do a court order, right.  I mean and he

20  just -- it happens all the time.  I mean --

21       **MR. RIZK:**  It doesn't matter -- it's not -- it doesn't

22  matter that he doesn't have ties to West Virginia.  He's going to

23  be living here.  Like the question is --

24       **MS. HALL:**  Right.  I get it.  I get it.

25       **MR. RIZK:**  -- is he going to flee the country.  Yeah.

1      **MS. HALL:**  But this is also a West Virginia plea and I would

2  --

3      **THE COURT:**  Normally people who live here would just have to

4  travel back and forth to West Virginia.

5      **MR. RIZK:**  He's going to be supervised here.  So it's

6  whether he has ties here, which he does.

7      **THE COURT:**  So if the parents -- here's my view.  If the

8  parents are willing to act as sureties, I would -- you know, my

9  inclination and then the Government is going to appeal to West

10  Virginia, if you want to do that -- if the AUSA there wants to do

11  this, I mean put him on the list for the halfway house.  We don't

12  file the --

13      **MR. RIZK:**  Release order.

14      **THE COURT:**  -- release order or anything.  We hold it.  That

15  way you can talk with the AUSA.  I would offer, if he's put on

16  the list to the halfway house, I will authorize release to the

17  halfway house.

18      And so I think we should do the surety advices today to get

19  a bond form.  We can fill it out and do the admonition to the

20  parents.  I don't know  what we'd do about -- you know, we can

21  see if this is -- you know if he can appear by Zoom in the

22  District of West Virginia.  You can tell me what you want to do,

23  Mr. Rizk, about the West Virginia court appearance.

24      **MR. RIZK:**  Mm hmm.

25      **THE COURT:**  I believe it seems to be taking -- in my last

1  case, there's no predictability about this from -- but in my last

2  case --

3      **MR. RIZK:**  Mm hmm.

4      **THE COURT:**  -- it took about three weeks for somebody to get

5  --

6      **MR. RIZK:**  Yeah.  So it's not a long list, but it's really

7  difficult to get to the bottom of it.

8      **THE COURT:**  Yeah.  So I won't file the release order until

9  you tell me whether you want to get the West Virginia --

10     **MS. HALL:**  Yes, Your Honor.

11     **THE COURT:**  The AUSA in West Virginia would have to appeal

12  there to the district court there.

13     **MS. HALL:**  Counselors say they wanted to make that clear and

14  then they're going to do there --

15     **THE COURT:**  A hundred percent.  A hundred percent.  We'll do

16  -- what Elaine will do is she'll email you a copy of the bond

17  form, so you have a copy of it.  They will ask that you send that

18  to the AUSA in West Virginia, because we don't want to file it on

19  the docket for obvious reasons (indiscernible).

20     **MR. RIZK:**  Yep.

21     (Pause)

22     **THE COURT:**  So what I'm going to do is just, while you're

23  doing that, I'm just going to say what the charges are for the

24  record --

25     **MR. RIZK:**  Sure.

1      **THE COURT:**  -- so the parents can hear it.  So for the

2  parents -- and I thank you for translating -- would you state

3  your appearance for the record, the interpreter.

4      **THE INTERPRETER:**  (Indiscernible).

5      **THE COURT:**  Good, thank you so much.  And you guys can come

6  on up.

7      **MR. RIZK:**  How much would you like to set the bond for, Your

8  Honor?

9      **THE COURT:**  How about $50,000 unsecured.

10     **MR. RIZK:**  That's what I was thinking.

11     **THE COURT:**  A lot of money under the circumstances.

12     Okay, and if you could say your name for the record, please.

13     **UNIDENTIFIED SPEAKER:**  (Indiscernible).

14     **THE COURT:**  So what I'm going to do is I understand that

15  you're willing to be a surety for your son.  I'm going to explain

16  what that means in a minute.  But it's important for you to know

17  the charges.

18     So I'm going to tell you the charges first. Your son has

19  been charged in the Southern District of West Virginia with --

20  it's a combination of the mask and the lack of a mic, so your son

21  has been charged in the Southern District of West Virginia with

22  inducing, enticing and coercing a minor to engage in sexually

23  explicit conduct, to produce a visual depiction of the conduct in

24  interstate and foreign commerce.

25     That's generally the charge.  The penalties are up to 30

13

1    years imprisonment with a minimum of 15 years; a $250,000 fine; 5

2    years supervised released; a maximum of life supervised release,

3    which is like probation; a $5,100 special assessment fee; another

4    $5,000 special assessment fee; and it could be more if there's a

5    prior conviction, which I don't think that there is.

6        So that is the charge and the penalties.  Do you both

7    understand that?

8        **UNIDENTIFIED SPEAKER:**  (Indiscernible).

9        **THE COURT:**  Okay.  I can see if it -- it says December 12,

10   2020 to January 11, 2021. And that's the allegation.

11       So I'm just looking at the date of the indictment.  Do you

12   happen to know, Ms. Hall, with just -- I'm just curious what date

13   the indictment was returned.  I have a copy of the arrest

14   warrant, so that's fine. The arrest warrant is dated the 26th of

15   April, 2022.

16       **MR. RIZK:**  April 26th, Your Honor.

17       **THE COURT:**  Okay, so it's the same date.  Okay.  Perfect.

18   Okay.  That's fine.  And I will just say one issue with danger,

19   Ms. Hall, and you can tell the AUSA that.  There's such a -- you

20   know, it's a lag of time before someone was indicted.  So -- so

21   that's the charge and the penalty.

22       I'm going to wait for Mr. Rizk to finish filling out the

23   bond.  He's going to show it to Ms. Hall and to pretrial, to see

24   if there's anything else before we go through the rest of it.

25       **MR. RIZK:**  And I --

14

1      **THE COURT:**  Mr. Rizk, you're going to have to look into the

2 passport issue, too.

3      **MR. RIZK:**  I will.

4      **THE COURT:**  Yep.  Just because --

5      **MR. RIZK:**  I'm happy to.

6      **THE COURT:**  You also have to think about what you want for

7 your next date.

8      **MR. RIZK:**  Uh-huh.

9      **UNIDENTIFIED SPEAKER:**  (Indiscernible).

10      **THE COURT:**  Yes.

11      **UNIDENTIFIED SPEAKER:**  (Indiscernible).

12      **THE COURT:**  I see.

13      **MS. HALL:**  Went across the border in March of this year.

14      **THE COURT:**  I see.

15      **MS. HALL:**  Picked up the phone, and that's what --

16      **THE COURT:**  Got it.

17      **MS. HALL:**  And that's what caused the investigation of

18 finding out --

19      **THE COURT:**  You told me that.  All right.  Thank you for

20 reminding me.  Thank you.

21      **MR. RIZK:**  All right.  So these are the conditions that I

22 checked and pretrial, Your Honor, or the Government can let me

23 know whether there need to be more.

24      Defendant must appear at all proceedings as ordered by the

15

1  Court.  You must surrender for service of any sentence imposed.

2  Defendant must not commit any federal, state, or local crime.

3  Defendant must not harass, threaten, intimidate, injure, tamper

4  with or retaliate against any witness, victim, informant, juror,

5  or officer of the court, or obstruct any criminal investigation.

6      Defendant must not harass, threaten, intimidate -- I'm

7  sorry.  Defendant must submit to supervision by Pretrial Services

8  and must report immediately upon release and thereafter as

9  directed, to Pretrial Services.  Defendant must surrender all

10 passports and other documents to Pretrial Services forthwith and

11 must not apply for other passports or travel documents.

12     And I'll add that Defense counsel is ordered to provide the

13 Government with any additional information concerning passport.

14 Defendant must not possess any firearm, destructive device or

15 other dangerous weapon.  Defendant must not use alcohol to excess

16 and must not use or possess any narcotic or other controlled

17 substance without a legal prescription.

18     Defendant must maintain current employment or, if

19 unemployed, must seek and maintain verifiable employment and must

20 commence an educational program subject to approval by Pretrial

21 Services.

22     **THE COURT:**  I think you should have a no-alcohol condition,

23 given the --

24     **MR. RIZK:**  Okay.

25     **THE COURT:**  -- given the treatment history through the VA.

16

1     **MR. RIZK:**  Sure.  Defendant must submit to drug and alcohol

2     testing as directed by Pretrial Services.  No alcohol.  Does the

3     Court want to order him to participate in treatment or get

4     evaluated for treatment?

5     **THE COURT:**  Yeah, I think treatment and mental health

6     counseling as directed by Pretrial Services.  I mean if he

7     doesn't need it, then if he needs it, he can get it.

8     **MR. RIZK:**  Okay.  And then must participate in substance

9     abuse treatment on an outpatient or residential basis, as

10    directed by Pretrial Services.

11    Defendant must not change residence or telephone number

12    without prior approval from Pretrial Services.  Defendant must

13    reside in halfway house at 111 Taylor Street.  Must comply with

14    all the conditions of that facility.

15    Defendant must comply with the following location

16    restrictions.  Defendant must not travel out of the Northern

17    District of California, except for travel to the Western -- sorry

18    the --

19    **THE COURT:**  Southern District --

20    **MR. RIZK:**  -- Southern District of West Virginia for court

21    appearances and attorney visits and other court obligations.

22    Defendant must remain at his or her residence at all times,

23    except for employment, education, medical, substance abuse,

24    mental health treatment, attorney visits, court appearances,

25    Court approved obligations or other activities approved in

1    advance by Pretrial Services.

2         **MS. HALL:**  Government has a question.

3         **THE COURT:**  Let's ask Pretrial Services, first.  So that way

4    when we fine and then you can weigh in.

5         **UNIDENTIFIED SPEAKER:**  (Indiscernible).

6         **THE COURT:**  Well, you have to tell me what you recommend,

7    because I -- with the halfway house I have no idea how it works.

8         **UNIDENTIFIED SPEAKER:**  (Indiscernible).

9         **THE COURT:**  Yeah.  That's fine.  I mean, you know, he's

10   locked out initially at the halfway house.  But then he has to

11   leave for court appointments and all that kind of stuff.  And

12   medical, so I think people would normally have the bracelet when

13   they do that.  Because to comply with --

14        **UNIDENTIFIED SPEAKER:**  (Indiscernible).

15        **THE COURT:**  Yes.

16        **Pretrial Services:**  I've had in the past where

17   (indiscernible).

18        **THE COURT:**  Well, I think what we should do for the bond

19   form then, Mr. Rizk, is we put, you know, location monitoring to

20   the extent that if the Defendant is not on lockdown.  And we'll

21   just have to figure out what that looks like when it gets there.

22   Because I think when he -- you know, when he travels, they take

23   off the monitor when he travels usually.  But if he's just on

24   lockdown at the halfway house, he just stays there.

25        So I think that's fine.  We'll revisit it if he's on

18

1  lockdown at the halfway house.  And then we'll revisit it if we

2  need to with some kind of a redo.

3      And my recommendation is because this will give the

4  Government time to pursue the appeal. Is that we also put a

5  status on calendar, you know, regarding removal for a date that

6  you can pick.  But I would say at least --

7      **MR. RIZK:**  By removal of the Defendant from the district.

8      **THE COURT:**  The district.  Yeah, because that way we can

9  kind of kick that can and keep the trial clock cold.

10     **MR. RIZK:**  Uh-huh.

11     **THE COURT:**  And because the Government's motion for

12 detention --

13     **MR. RIZK:**  Yeah.

14     **THE COURT:**  -- is pending if you appeal it.  So I think we

15 should put it on later this month.  We can put it on in a week.

16 I -- you know, it should be pretty quick.  It should be pretty

17 quick.

18     **MR. RIZK:**  Yeah.

19     **THE COURT:**  If you put it on, since you're here anyway on

20 the 27th.

21     **MR. RIZK:**  Okay.

22     **THE COURT:**  I'll put it on for Monday. You can put that on

23 the bond form.  The next date will be Monday, June 27th at 10:30

24 and obviously Ms. Hall, if they need more time in the other

25 district, you can just kick it, we'll kick it.  You can just let

1    us know.

2        And, of course, the minute order will reflect the detention

3    order is stayed, but I'd ask to put him on the list for the

4    halfway house and keep me posted.

5        **UNIDENTIFIED SPEAKER:**  (Indiscernible).

6        **MR. RIZK:**  That's fine.  So the location monitoring

7    condition is -- how would you like me to phrase it?

8        **THE COURT:**  I guess just put location monitoring as deemed

9    appropriate by Pretrial Services.

10       **MR. RIZK:**  ARF?

11       **UNIDENTIFIED SPEAKER:**  (Indiscernible).

12       **MR. RIZK:**  Okay.

13       **MS. HALL:**  It needs to be ordered by the --

14       **THE COURT:**  We're putting locked down in the halfway house

15   and then you put electronic monitoring if lockdown condition is

16   subsequently altered.  How about that?  And that way we -- at

17   least then --

18       **MR. RIZK:**  Location monitoring --

19       **THE COURT:**  If lockdown condition is lifted.  And then no

20   contact with minors. One digital device, (not an iPhone) what is

21   the rest you say, to be monitored by Pretrial Services.  Yeah.

22       Let Mr. Rizk catch up with the writing, firsts, Ms. Hall.

23       **MR. RIZK:**  Right.  So I've got no contact with minors.

24       **THE COURT:**  One digital device.

1    **MR. RIZK:**  One digital device.

2    **THE COURT:**  (Not an iPhone) only.   To be monitored by

3    Pretrial Services.   We'll let Mr. Rizk finish writing and then

4    I'll tell you.

5    **UNIDENTIFIED SPEAKER:**  (Indiscernible).

6    **THE COURT:**  Yeah.

7    **UNIDENTIFIED SPEAKER:**  (Indiscernible).

8    **THE COURT:**  Okay.  If he want to work?

9    **UNIDENTIFIED SPEAKER:**  Yes.

10   **THE COURT:**  For the first 30 days he has to stay in the

11   halfway house.  Everybody has to stay in the halfway house for

12   the first 30 days.  For now, because it's a serious crime.  I'm

13   imposing a lockdown.  At some point, perhaps we can revisit that.

14   But for now this is the condition.

15   **MR. RIZK:**  It's lockdown, but I read a number of exceptions,

16   including other activities approved by Pretrial.  Is that okay?

17   **THE COURT:**  I mean if Pretrial Services approves it. If he

18   gets sick and has to go to the doctor.

19   **MR. RIZK:**  There's also like employment, education, medical,

20   substance abuse, mental health, attorney visits, court

21   appearances.

22   **THE COURT:**  Well, I think that the -- all the counseling is

23   by Zoom.

24   **MR. RIZK:**  Yeah.

1    **THE COURT:**  And so I think for now it's lockdown, except as

2    permitted by Pretrial Services.  So that puts --

3    **MR. RIZK:**  You don't want employment, education?

4    **THE COURT:**  I just think except as permitted by Pretrial

5    Services.

6    **MR. RIZK:**  Okay. I'm going to need another on employment,

7    unfortunately.  Because I already circled it.

8    **THE COURT:**  Another bond form?

9    **MR. RIZK:**  Another bond form. Sorry.

10    **THE COURT:**  All right, Ms. Hall, you wanted to weigh in.

11    **MS. HALL:**  I was going to add the no contact with minors.

12    The only other thing I would just ask is no devices.

13    **THE COURT:**  Well, no, we can't do no devices.

14    **MS. HALL:**  Then I would ask that the iPhone --

15    **THE COURT:**  They're monitoring it.  They put the software on

16    it.

17    **MS. HALL:**  But there's Samsung, the Google phone, like the

18    iPhone it --

19    **THE COURT:**  I said no iPhone.

20    **MS. HALL:**  All right.  But there's also Samsung and Google

21    phones that --

22    **THE COURT:**  So it's a device approved by Pretrial Services.

23    I promise you it will be 100 percent fine.  They have a

24    monitoring on it.  They do it -- you can't monitor -- the

22

1  monitoring software doesn't work with an iPhone.  And there's one

2  device approved by Pretrial Services that's monitored.  It's

3  fine.

4      **MR. RIZK:**  He can't make court appearances if he doesn't

5  have --

6      **THE COURT:**  And he can't have -- he's got to be able to

7  Zoom, right.

8      **MR. RIZK:**  Yep.

9      **THE COURT:**  And there's case law you can't deprive people of

10  access to the internet.  You just can't.

11      So --

12      **MS. HALL:**  But there might be an exception for people that

13  are using --

14      **THE COURT:**  There is not.  I promise you there is not.

15  Okay.  There's not.  I mean we've gone this path before in the

16  district, right, and we just -- you just -- people have to live

17  in society.  And there's no way he can do anything, including his

18  court appearances.  And that's why we have monitoring software

19  and it's 100 percent, you know --

20      **MS. HALL:**  I'm unfamiliar with --

21      **THE COURT:**  Yeah, yeah, yeah. It's 100 percent okay.  Mr.

22  Rizk rewrite the bond.

23      I'm going to explain to the parents what it means to be a

24  surety and your son is a surety, too.  And Mr. Chin, I want you

25  to look at me and listen while I say this.  No one has to pay any

23

1    money. But the amount of the bond is $50,000. If you violate any

2    of the conditions of your supervision, the Court declares the

3    bond forfeit.

4        And then a motion by the Government is after you and your

5    parents for the $50,000.  Debts to the Government are very

6    serious.  They're not dischargeable.  So your parents are risking

7    their financial future to support you in court here today.

8        The idea is that you will be ruining their future if you

9    were to violate the conditions of probation.  Okay.

10       And to the parents, you've heard the conditions that we're

11   imposing that Mr. Rizk has just recited unto the record.  You

12   can't control your son's behavior, I know that.  But if he

13   violates the conditions of the supervision, you risk the $50,000,

14   that you're promising to pay if he violates this supervision.

15       So I don't know exactly what he said, but that's okay.  So

16   if he violates the conditions of the supervision, the Government

17   will come after you for the $50,000.  And so you don't have to be

18   a surety if you don't want to.  It's voluntary.  If you change

19   your mind later, you don't have to pay anything.  But the

20   Government has pull, so they come and they take your bank

21   account.  They garnish your wages.  They go after your assets.

22       And it's like any creditor, but it's the Government.  So

23   it's voluntary.  If you change your mind you can come back to

24   Court and ask me to be relieved -- ask me to let you off the

25   bond.  You have to come here to do that.  So if you sign on the

24

1    bond, you're signing up to be responsible for up to $50,000.  For

2    $50,000.

3        All right.  So I'll ask you both, do you agree to be your

4    son's surety?

5        **UNIDENTIFIED SPEAKER:**  (Indiscernible).

6        **THE COURT:**  So a halfway house is where he'll live.  The

7    halfway house is where he will live.  It's kind of like a secure

8    facility.  He really won't be able to go out.  It's in San

9    Francisco, here.  It's not a prison.  It's like sometimes when

10   people leave prison, they go -- they transition to the halfway

11   house.  Eventually usually people can work, go to school.

12       I would suggest Mr. Chin, that you try to, you know, you

13   have some education.  But it would be good if you could be

14   productive with your time.  And I know that you attended San

15   Francisco State.  And so maybe you can take some college courses

16   or do something productive while you're at the halfway house, if

17   you get out.

18       And then we'll see how things are after some period of time

19   in the halfway house.  Okay.  We'll see about relaxing those

20   conditions.  So we'll see.  The first 30 days they don't let you

21   out.  That's just how it goes.  I'm imposing a lockdown

22   condition.  About two months, if everything is super stable,

23   we'll look at letting you work and do other things. Okay.  Okay.

24       And so all of this will be stayed.  And Ms. Hall, if you

25   could just update us by Friday, you know, because if we need to

1  continue the hearing, we can continue it.  It's fine.  About the

2  status of the appeal -- I mean obviously update us as soon as you

3  know.  But if you hear sooner.  But in any event, please update

4  us by noon on Friday so we can -- or even by the calendar on

5  Friday the 24th.

6      **UNIDENTIFIED SPEAKER:**  (Indiscernible).

7      **THE COURT:**  All right.  So I've just got a couple more

8  things to do, just to make sure.  So we already put the

9  conditions on the record.

10     Mr. Chin, if you violate the conditions, it's a separate

11  crime called contempt of court.  Not only would you go back into

12  custody, but that's a separate crime.  As Mr. Rizk said, it's a

13  crime to try to influence a juror, threaten or attempt to bribe a

14  witness, retaliate against anyone for providing information about

15  the case or otherwise obstruct justice.

16     Mr. Rizk mentioned the condition that you have to show up to

17  all court appearances.  All of those crimes are an extra five

18  years in prison and include a $150,000 fine.  Another condition

19  if you commit another crime on release, that's an aggravating

20  factor and you might get a bigger sentence than ordinarily.

21     Your parents have agreed to be a surety.  Mr. Chin, do you

22  promise me that you will abide by all of the conditions of your

23  release?

24     **UNIDENTIFIED SPEAKER:**  (Indiscernible).

25     **THE COURT:**  Okay.  So you've got another court appearance on

26

1   the 27th.  At that point we'll get a status on the West Virginia

2   appeal.  We'll get a status on the halfway house, on the list.

3        And I'll send it back for the parents to sign the surety and

4   for Mr. Chin to sign as surety and Defendant.

5        (Pause)

6        Just so you know, Ms. Hall, I tell her the money and I think

7   a lot of people do because somebody that's actually serious

8   enough that it's not so illusory that it doesn't -- that it

9   doesn't mean anything.  So that's kind of the -- it very much

10  depends, you know.  Sometimes 25,000 or 50,000 is a lot of money.

11       All right.  So I'm going to sign it, but we're going to hold

12  it and the release is stayed.  And then when we do release him, I

13  think that probably, Mr. Rizk, you know, if the Government

14  somehow, whatever happens in West Virginia, I think probably we

15  should -- are the parents able to pick him up if he gets release?

16       **UNIDENTIFIED SPEAKER:**  (Indiscernible).

17       **THE COURT:**  I don't know.

18       **MR. RIZK:**  I don't know.  I didn't ask that question.

19       **THE COURT:**  That's okay, we'll work it out.

20       **MR. RIZK:**  We'll work it out.

21       **THE COURT:**  But I think have him released at 7:00 in the

22  morning, so he can take BART directly to the house.

23       **MR. RIZK:**  Yeah, It won't be a problem getting him a ride

24  for sure.

25       **THE COURT:**  All right.

1      **MR. RIZK:**  He's got a friend and other folks who are

2  supportive.

3      **THE COURT:**  Okay. Good.

4      **MS. HALL:**  Thank you, Judge.

5      **THE COURT:**  So we'll see you on the 27th or at least have an

6  update by then.

7      Okay.

8      **MR. RIZK:**  Your Honor.

9      **UNIDENTIFIED SPEAKER:**  (Indiscernible).

10     **THE COURT:**  The 27th.  You do not have to come to court, but

11  you can if you want to.  So you're not required to come to Court.

12     **UNIDENTIFIED SPEAKER:**  (Indiscernible).

13     **THE COURT:**  It will be here.

14     **UNIDENTIFIED SPEAKER:**  (Indiscernible).

15     **THE COURT:**  No, not for -- if he gets released to the

16  halfway house we'll put another date on calendar to see when

17  things get stable and then we'll talk about letting him go back

18  to work.

19      In the meantime, he'll have treatment, mental health

20  counseling, substance abuse counseling.  You do all those things

21  by Zoom, by video.  And hopefully if everything goes well, if the

22  Government, you know, the other court says it's okay for him to

23  get out then we'll look at whether he can go back to work after

24  that.

25      Okay.  All right.

28

1        **MR. RIZK:**  That's it.  Thanks, Your Honor.

2        **THE COURT:**  Then the 27th, thank you. Thank you.  Thanks for

3   being here.

4        (Proceedings adjourned)

5                              ---oOo---

6

7

8

9

10

11

12

13                    **C E R T I F I C A T E**

14       I certify that the foregoing is a correct transcript from

15   the official electronic sound recording of the proceedings in the

16   above-entitled matter.

17

18   *Dipti Patel*

19   _____

20   DIPTI PATEL, CET-997

21   LIBERTY TRANSCRIPTS            Date: June 25, 2022

22

23

24

25