IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                          Criminal No. 3:22-cr-00087

**ALEX KAI TICK CHIN**

### DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant, Alex Kai Tick Chin, by his counsel, moves this Court, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure and the Fourth and Fifth Amendments of the United States Constitution, for the entry of an appropriate Order suppressing the introduction of all evidence obtained through a forensic analysis of the contents of the defendant's Samsung Galaxy 9 smartphone that was illegally seized on March 21, 2022. This would include all of the suspected images of child pornography which the Government would seek to introduce at trial for purposes of proving Counts One and Two of the Second Superseding Indictment. Dkt. No. 39.

The law enforcement officers involved with the March 21, 2022, illegal seizure were employed by the United States Customs and Border Protection agency (herein after referred to as "border patrol officers") at the Paso Del Norte port of entry in El Paso, Texas. The defendant also seeks to suppress incriminating responses made by him to questions asked by border patrol officers while he in their *de facto* custody that day.

Finally, the defendant further seeks to suppress the anticipated testimony from two minors, herein after referred to as Minor Female 1 and Minor Female 2, concerning their communications with the defendant through the Snapchat social media forum and phone calls made during the time period from June 2020 through March of 2022. Their identities, as well as their testimony, were only developed as the direct result of information first generated from the March 21, 2022, illegal search and seizure of the defendant's Samsung Galaxy 9 smartphone. In support of this Motion, the defendant states as follows:

(1) During the afternoon of March 21, 2022, the defendant was in El Paso, Texas. The defendant decided to cross the border, on foot, into Mexico in order to get something to eat. The defendant did not have a passport. However, the border patrol officers at the Paso Del Norte port of entry told the defendant that since he had a drivers' license, he could walk into Mexico via the Paso Del Norte International Bridge and would be allowed to return using that form of identification. The defendant had two smartphones in his possession when he crossed the U.S. border into Mexico. The defendant walked across the bridge, spent approximately one to two hours in Mexico, and then re-crossed the bridge to return to the United States.

(2) Around 7:30 p.m. on March 21, 2022, the defendant presented his driver's license to border patrol officers for re-entry at the Paso Del Norte port of entry in El Paso, Texas. The defendant was told to submit his thumb for a fingerprint scan. Apparently, the results were run through a law enforcement

database which advised the border patrol officers that the defendant was a registered sex offender. The defendant has a 2014 felony conviction for possession of child pornography from the Superior Court of California, County of San Francisco. The border patrol officers who were processing the defendant had no other information which suggested that there were any active arrest warrants in the United States for the defendant. The officers had no information which suggested that the defendant had engaged in any criminal conduct before crossing the border into Mexico or that he had committed any crime during his brief stay in Mexico. Finally, the officers had no information that the defendant was currently under investigation by any law enforcement agency in the United States.

(3)    After learning about the defendant's status as a sex offender, the border patrol officers directed the defendant to another room for a secondary inspection. At that time, the defendant was ordered to turn over his two smartphones and surrender the passcodes to open both smartphones. The defendant recalls asking for a lawyer at this time and being told by the border patrol officers that they have not reached the point for him to need a lawyer. The defendant then complied with the officers' order and wrote the passcodes on a piece of paper. The defendant told the officers that they did not have his permission to open and examine his smartphones. Handcuffs were placed on one of the defendant's arms and then cuffed to the bench on which the defendant was seated. The smartphones were taken to another office, where two border patrol officers conducted what has been described as a "basic search" of the devices.

(4) Before any browsing of the contents of a smartphone is undertaken, the device is first placed into airplane mode in order to sever any connection between the device and the Internet. Officers can then review the available contents of any active application on the smartphone that will continue to operate without Internet access.[1]

(5) Approximately forty minutes into the basic search of the defendant's Samsung Galaxy 9 smartphone, a border patrol officer, Monica McQuality, reported seeing pictures of a fully clothed suspected underaged female as well as a suspected underaged female exposing her breasts. At that time, Officer McQuality reportedly stopped her basic search of this smartphone and reported her findings to a second border patrol officer, Wally Terrazas [2]

(6) Officer Terrazas decided to question the defendant about the photograph of a suspected female minor which was visible on the screen saver for the Samsung Galaxy 9 smartphone. At this point in time, the defendant remained handcuffed to the bench in the secondary inspection area. The defendant was effectively in custody, and no *Miranda* warnings were provided to the defendant before this questioning began.

(7) In responding to Officer Terrazas's question, the defendant said that the person was a friend whom he met online about a year and a half ago. The

---

[1] Placing a smartphone in airplane mode further prevents border patrol officers from accessing any information that might be stored on a cloud based server, as opposed to the smartphone's memory chip.

[2] No pornographic images of minors were observed by another border patrol officer who was conducting a similar basic search of the contents of the defendant's second smartphone.

defendant was asked if she was a relative. The defendant said she was not. Officer Terrazas then asked the defendant how old the female was. The defendant responded that she was 13 years old. The defendant was not asked any additional questions and remained detained in the secondary inspection area.

(8) Upon information and belief, the border patrol officers proceeded to contact Homeland Security Investigations ("HSI") which sent two agents, Jason Grijalva and Ricardo Rubio, to the Paso Del Norte port of entry to check the contents of the defendant's smartphone. Around 10:30 p.m. on March 22, 2022, the two HSI agents conducted a second basic search of the defendant's Samsung Galaxy 9 smartphone. The agents reported finding suspicious photographs involving a minor which appeared to be screen shots taken from the defendant's Snapchat communications with others. These photographs were located within the gallery application. Several of the pictures depicted a female whose age the agents considered to be between 13 and 15 years old. In the gallery, there were pictures of a female pulling up her shirt to expose her breasts. There were two pictures in the gallery of a female's vagina in which no other portion of the female's body was visible.

(9) Agents also reviewed a portion of Snapchat conversations between the defendant and a female whose Snapchat profile picture matched several of the photos of the female whose image they had just observed. The profile included the female's full name and the username for the Snapchat profile. One of the Snapchat messages which the female had sent to the defendant was "I thought that anyway

5

you can leave and maybe come back when I graduate high school." Two other viewed messages sent by the defendant to this individual included "My little cum kitten" and "I'm only into you."

(10)   Around 11:45 a.m., the two HSI agents entered the room where the defendant was detained and provided him with *Miranda* rights. The defendant exercised his right to remain silent and requested to first speak with a lawyer. No further questions were presented by the HSI agents. After being detained more than four and a half hours, the defendant was released and allowed to re-enter the United States without being arrested on any criminal charges. The defendant's two smartphones were not returned and remained in the custody of HSI.

(11)   On or about March 22, 2022, HSI agent Grijalva conducted a Facebook search for the female whose images were seen in the gallery and on the Snapchat profile page. He discovered that she was reportedly a student at Spring Valley High School in Cabell County, West Virginia. On or about March 23, 2022, an HSI agent in Charleston, West Virginia, conducted a follow up check and verified from the female's date of birth that she was currently eighteen years old. However, she has been subsequently designated as Minor Female 1 as she was seventeen years old at the time of several of her Snapchat interactions with the defendant between December 12, 2020, and February 14, 2021, as charged in the Second Superseding Indictment.

(12)   On or about March 25, 2022, HSI agent Grijalva submitted an application for a search warrant for the contents of the defendant's Samsung

6

Galaxy 9 smartphone to United States Magistrate Judge Robert F. Castaneda in the United States District Court for the Western District of Texas. The search warrant application was approved. As the application for the warrant was tainted by information obtained entirely through the two illegal searches of the defendant's smartphone, there was insufficient probable cause to support the issuance of a search warrant. The smartphone was subsequently forensically examined, and a detailed report listing of the contents of the approximate 106 GB of data has been provided to counsel pursuant to the terms of this Court's Protective Order. Dkt. No. 38. A copy of the March 25, 2022, Search and Seizure Warrant issued by Magistrate Judge Castaneda and the corresponding application for search warrant have been attached as Exhibit A.

(13) On or about March 29, 2022, Minor Female 1 was interviewed in conjunction with HSI's investigation of the defendant. Minor Female 1 has alleged that the defendant had requested her to take pictures of her body to send to him. During the interview, Minor Female 1 was shown two images of a vagina that appeared within the gallery application on January 9, 2021. Minor Female 1 identified the images as something which was taken at her home and inferred that she had previously sent these images, and as well as other non-pornographic images of herself to the defendant.

## Legal Grounds for Suppression of Evidence

**I.  The border patrol officers lacked any reasonable suspicion that some form of digital contraband existed within the defendant's smartphone in order to seize and conduct a basic search of its contents during the defendant's reentry to the United States.**

(14)  In the absence of a judicially authorized search warrant, the Fourth Amendment requires that any searches of private property fall within the scope of a delineated exception to the search warrant. *Riley v. California,* 573 U.S. 373, 382 (2014); *United States v. Aigbekaen*, 943 F.3d 713, 720 (4th Cir. 2019); *United States v. Kolsuz*, 890 F.3d 133, 137 (4th Cir. 2018). One such exception is the border search exception, which recognizes significant sovereign interests in monitoring incoming traffic to the United States. *Aigbekaen*, 943 F.3d at 720. The actions taken by the border patrol officers in seizing the defendant's smartphones and reviewing their contents without the defendant's consent do not fall within the scope of the recognized border search exception.

(15)  The Supreme Court has held that in certain instances "highly intrusive searches" of property at border crossings may qualify as being considered "nonroutine" and require some level of individualized suspicion before proceeding. *See United States v. Flores-Montano*, 541 U.S. 149, 152 (2004); *Aigbekaen*, 943 F.3d at 720. In *Riley v. California,* 573 U.S. 373, 385-391 (2014), the Supreme Court recognized that the significant privacy interests associated with the vast quantities of sensitive and personal information contained within cell phones required police officers to obtain search warrants before examining the contents of these devices.

(16) This Court should follow the rationale behind the *Riley* decision and find that, at a minimum, the border patrol officers must have reasonable suspicion that some form of digital contraband exists on a smartphone before seizing and conducting a non-consensual search of its contents. At the time of the defendant's border crossing, the border patrol officers lacked any reasonable suspicion that the defendant had engaged in any criminal conduct or that there would be contraband images of child pornography on his smartphone.

(17) The fact that the border patrol officers were aware of the defendant's status as a registered sex offender would not provide reasonable suspicion to warrant browsing through the contents of his smartphone. By analogy, a police officer being aware of a person's criminal history, by itself, does not provide reasonable suspicion in order to conduct an investigative stop of a person. *United States v. Black*, 707 F.3d 531, 540 (4th Cir. 2013); *United States v. Foster,* 634 F.3d 243, 246-247 (4th Cir. 2011); *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997).

II. **The defendant was handcuffed and in custody of the border patrol officers when he was asked questions about the suspected minor whose image was on the screen saver on one of his two smartphones.**

(18) The test for determining whether an individual is "in custody" for *Miranda* purposes is whether under the totality of circumstances, the "suspect's freedom of action is curtailed to a degree associated with an arrest." *Berkemer v. McCarty,* 468 U.S. 420, 440 (1984); *United States v. Leggette*, 57 F. 4th 406, 410 (4th

9

Cir. 2023). In the context of a border crossing, courts have held that an arrest occurs when "a reasonable person would believe that he is being subjected to more than temporary detention occasioned by border crossing formalities." *United States v. Price*, 980 F.3d 1211, 1225 (9th Cir. 2020); *See also United States v. Ventura*, 85 F.3d 708, 710-711 (1st Cir. 1996).

(19) There is a two part test for determining the extent of a suspect's detention in relation to *Miranda* warnings. The first is to determine whether a reasonable person in that situation would have felt that he or she was not at liberty to terminate the questioning and leave. *Leggette*, 57 F.4th at 410. The second evaluates whether the relative environment presents the same inherently coercive pressures as the type of questioning which occurs at a police station. *Id*.

(20) Following the seizure of his two smartphones, one of the defendant's arms was handcuffed to a bench within the confines of a secondary inspection area. The defendant was further awaiting the approval of the border patrol officers to reenter the United States. A reasonable person in the defendant's position would not have considered themselves as free to leave or to otherwise terminate any questioning which was initiated by the border parole officers. Moreover, once the defendant had later been given his *Miranda* warnings, he exercised his right to remain silent with no additional questions being asked by the HSI agents. This would suggest that he would have not answered the first round of questions if the border patrol officers had provided *Miranda* warnings.

**III.    The subsequent forensic analysis of the defendant's smartphone as well as the anticipated testimony from Minor Female 1 were developed entirely from the information obtained directly from the illegal searches of the defendant's smartphone and should be <u>considered inadmissible as fruits of the poisonous tree.</u>**

(21)    In this case, the subsequent investigation undertaken by HSI to determine the identity and whereabouts of Minor Female 1 took place as the result of the information generated from illegal seizure and searches as opposed to information derived from an independent source.  The information obtained from the two basic searches were set forth in the March 25, 2022, application for search warrant for the defendant's smartphone. (Ex. A, Bates Nos. Chin - 0049-0051.  HSI had no other facts that would suggest that the defendant possessed child pornography content on his phone that to support the issuance of the March 25, 2022, search warrant.  The subsequent discovery of the whereabouts of Minor Female 1, as well as her March 29, 2022, interview, came about only from the previous review of the Snapchat conversations during the second basic search.

(22)    The exclusionary rule prohibits the admission of evidence that is acquired as a direct or indirect result of an illegal search. *United States v. Mowatt*, 513 F.3d 395, 403 (4th Cir. 2008).  Where there was no reasonable suspicion to justify the initial seizure and search of the defendant's smartphone, and no factual basis supporting a probable cause determination for the issuance of the search warrant, all subsequently obtained evidence, either tangible or testimonial, obtained as a direct result of an illegal search should be excluded as fruit of the

11

poisonous tree. *See Utah v. Strieff*, 579 U.S. 232, 237-238 (2016); *United States v. Terry*, 909 F.3d 716, 720 (4th Cir. 2018).

For the reasons set forth herein, as well as in the accompanying Memorandum in Support, the defendant respectfully moves for the entry of an appropriate Order granting the defendant's Motion and precluding the Government from introducing any forensic evidence concerning the contents of the defendant's Samsung Galaxy 9 smartphone as well as the anticipated testimony of Minor Female 1 concerning her prior communications with the defendant.

Respectfully submitted this 6th day of March, 2023.

**ALEX KAI TICK CHIN**

**By Counsel**

**WESLEY P. PAGE**
**FEDERAL PUBLIC DEFENDER**

**s/David R. Bungard**
David R. Bungard, Bar Number: 5739
Assistant Federal Public Defender
Office of the Federal Public Defender
300 Virginia Street, East, Room 3400
Charleston, West Virginia  25301
Telephone: (304) 347-3350
Facsimile: (304) 347-3356
E-mail: david_bungard@fd.org